2001-NMCA-047

27 P.3d 984

**RIO GRANDE CHAPTER of the SIERRA CLUB, Plaintiff/Respondent–Appellee,**

v.

**NEW MEXICO MINING COMMISSION, Defendant/Petitioner–Appellant,**

v.

New Mexico Energy, Minerals and Natural Resources Department, Mining and Minerals Division, and Copar Pumice Co., Inc., Intervenors/Petitioners–Appellants.

Nos. 20,247, 20,250, 20,280.

Court of Appeals of New Mexico.

March 28, 2001.

Certiorari Granted, No. 26,904, July 18, 2001.

Douglas W. Wolf, Douglas Meiklejohn, New Mexico Environmental Law Center, Santa Fe, NM, for Appellee Rio Grande Chapter of the Sierra Club.

Patricia A. Madrid, Attorney General, Patrick T. Simpson, Assistant Attorney General, Santa Fe, NM for Appellant New Mexico Mining Commission.

Bruce Rogoff, Special Assistant Attorney General, Santa Fe, NM, for Appellant Energy, Minerals and Natural Resources Dep't.

Galen M. Buller, Louis W. Rose, Brett Olsen, Montgomery & Andrews, P.A., Santa Fe, NM, for Appellant Copar Pumice Co., Inc.

Dalva L. Moellenberg, Gallagher & Kennedy, P.A., Phoenix, AZ, for Amicus Curiae New Mexico Mining Association.

## OPINION

BOSSON, Chief Judge.

{1} These consolidated appeals present the narrow legal issue of whether the Director of the Mining and Minerals Division of the New Mexico Energy, Minerals, and Natural Resources Department (MMD) acted within her authority in (1) modifying a mining permit to include an area outside the original permit boundaries, and then (2) issuing a permit for a proposed mine within the expanded boundaries as a new unit of an existing mining operation. The Director took that approach rather than requiring a more comprehensive permit as a new mining operation. Having considered the unique facts and history of this case, we determine that the Director had such authority and did not abuse it. We reverse the district court order to the contrary, and remand for entry of an order affirming the New Mexico Mining Commission (the Commission).

## BACKGROUND

{2} The conflict in this case arises over the classification of Copar Pumice Company's El Cajete mine. The Director allowed Copar to revise an existing mining permit to include the proposed El Cajete operation as a new unit of an existing mining operation. The Rio Grande Chapter of the Sierra Club (the Sierra Club) protested and petitioned the Commission for a review. The Sierra Club contended that the El Cajete operation should be regarded as a new mining operation and not just a new unit of an existing mine. Although both classifications of mining activity are subject to MMD regulation, a new mining operation is regulated according to a more rigorous standard than a new unit of an existing mine.

{3} The New Mexico Mining Act categorizes three types of mining operations relevant to our inquiry: existing mining operations, new units of existing mining operations, and new mining operations. *See* NMSA 1978, § 69–36–3(E) & (I) (1993); NMSA 1978, § 69–36–7(G) & (L) (1997). Each category of mining operation is subject to different degrees of regulation with new mining operations subject to the most stringent standards, existing mines being subject to the least rigorous standard, and new units of existing mines being somewhere in between. The most significant differences between the standards for a new mining operation and those for a new unit of an existing operation are: (1) a new mining operation must present one year of baseline environmental data as a prerequisite to a permit, and (2) operators with a record of violations, so called "bad actors," cannot receive a permit for a new mine. *See* NMSA 1978, § 69–36–12(A) & (B)(5) (1993); 19 NMAC 10.2 Subpart 6—New Mining Operations Rule 602.D.13 (1996). New mining operations must also preserve

topsoil that has been removed and are subject to slightly different reclamation rules. *See* § 69–36–7(H)(8); Rules 603.C to 603.H (stating the reclamation requirements for new mines).

{4} In proceedings before the Commission, on the Sierra Club's petition for review, the parties stipulated to the following facts. In November 1987, Copar filed a plan of operation with the United States Forest Service to operate a 33–acre, open-pit pumice mine (the Las Conchas mine) on mining claims in the Santa Fe National Forest. This plan, with modifications, was approved by the Forest Service district ranger in January 1989, and the Las Conchas mine was permitted at 33 acres. Copar began operations at the Las Conchas mine in 1989.

{5} In 1992, while the Las Conchas mine was operational, Copar filed a plan of operation with the Forest Service for the proposed El Cajete mine, which encompassed 133 acres. Eventually, the El Cajete mine was permitted by the Forest Service at 76.2 acres. The parties stipulated that Copar considered the El Cajete mine an expansion of its existing operation at the Las Conchas mine. The outside boundaries of the Las Conchas and El Cajete sites are 1.1 miles apart.

{6} In 1993, the New Mexico Legislature passed the New Mexico Mining Act to promote the "responsible utilization and reclamation of lands affected by the exploration, mining or the extraction of minerals that are vital to the welfare of New Mexico." NMSA 1978, § 69–36–2 (1993). The Act provides for issuing and renewing permits for new and existing mining operations as well as exploratory operations. *See, e.g.,* NMSA 1978, §§ 69–36–5, –7, –11, –12 & –13 (1993, as amended through 1997). When the Mining Act was passed, it required existing mining operations to obtain a mining permit and to submit a site assessment. *See* § 69–36–5.

{7} In June 1994, Copar submitted a combined site assessment for both the existing Las Conchas mine and the proposed El Cajete mine, stating that El Cajete was a logical expansion of Las Conchas and should be considered an existing mine under the Mining Act. Copar proposed a permit area that included both mines. In July 1994, Copar received a letter from the Acting Director of MMD advising that El Cajete did not qualify as an existing mine but that it could be brought in later in the permitting process as a revision or new unit of an existing site. Copar was advised that the only other alternative was to permit El Cajete as a completely separate and new mine site. Although MMD informed Copar that the El Cajete site did not qualify as an existing mining operation, the Director nonetheless testified before the Commission that the permit coordinator of MMD disagreed with the Director and was of the opinion that the El Cajete site could qualify as an existing site.

{8} In November 1995, Copar requested an extension for submitting the Las Conchas/El Cajete Permit Application and Closeout Plan, noting again that the El Cajete mine should be included in the permit application as part of the existing mining operation at Las Conchas. After further correspondence, the Director wrote in March 1996 that MMD would accept a permit boundary for the Las Conchas site alone, advising Copar that El Cajete could be brought into the Las Conchas permit at a later date if it was determined not to be a new mine. MMD felt at the time that combining the two sites would delay the Las Conchas mining permit approval. MMD was anxious to get that process completed because the Las Conchas mine was already in reclamation without an MMD approved reclamation plan, and MMD was concerned about some of Copar's reclamation practices.

{9} In May 1996, Copar provided MMD with a permit boundary map that included only the Las Conchas mine but reserved the right to appeal the decision to separate El Cajete from the proposed permit boundary. In October 1996, Copar filed a request to revise the permit area for the Las Conchas mine to include the El Cajete site as a new unit of Las Conchas within the proposed, revised permit area. This was Copar's first reference to the El Cajete mine as a unit of the Las Conchas mine instead of simply an existing mine. After public hearings, MMD issued a permit for the existing Las Conchas mine in October 1997. In March 1998, MMD

revised the Las Conchas permit to include El Cajete as a new unit. The Sierra Club and the Jemez Homeowners Alliance appealed this revision to the Commission. Copar began mining the El Cajete site after the permit was issued in March 1998, and continues those mining operations today.

{10} After hearing the Sierra Club's petition to review the permit revision, the Commission entered an order in September 1998, ruling that under the Act El Cajete was a new unit of the existing Las Conchas mine rather than a new mining operation. An appeal was taken to district court. The district court determined that the Commission's order was not in accordance with law, and the court set aside the order and ordered the Commission to vacate the permit revision. Copar, MMD, and the Commission appealed the district court order to this Court. In addition to the briefs filed by the parties, the New Mexico Mining Association filed an amicus brief in support of appellants.

**DISCUSSION**

{11} The Mining Act provides that the Commission shall adopt regulations to implement the Mining Act. Section 69–36–7(D) of the Act provides that the Commission shall adopt regulations that provide for permit modifications. It states, in relevant part,

A permit modification to the permit for an existing mining operation shall be obtained for each new discrete processing, leaching, excavation, storage or stockpile unit *located within the permit area of an existing mining operation* and not identified in the permit of an existing mining operation and for each expansion of such a unit identified in the permit for an existing mining operation that exceeds the design limits specified in the permit.

Section 69–36–7(D) (emphasis added).

{12} The Sierra Club argues that Section 69–36–7(D) limits the authority of the Director and the Commission with regard to modifying permits for existing mines, to those operations "located within the permit area of an existing mining operation." Since the El Cajete site was not within the area encompassed by the original Las Conchas permit, the Sierra Club contends that when MMD modified the Las Conchas permit to include El Cajete as a new unit, instead of a new mining operation, MMD was acting in a manner not authorized by rule or statute and not otherwise in accordance with law.

{13} The Sierra Club also urges that the actions of MMD in this instance, if not reversed, could open the door to unlimited expansion of existing mines without the degree of regulation that is appropriate. According to the Sierra Club, any mining company can now expand the permit area for an existing mine beyond the original boundaries to include a proposed new site and then designate the new site as a new unit of the existing mine, all without complying with the more rigorous standards that apply to a new mining operation. The operator could then repeat the expansion in a future series of permit area revisions followed by new unit designations. According to the Sierra Club, this scenario would subvert the true intent of the Act by allowing mining operators to "leap frog" across the landscape, without ever being subject to the most extensive regulation applicable to a new mining operation. We address these concerns separately at the end of this opinion.

{14} MMD claims that it honored both the language and the spirit of Section 69–36–7(D). It argues that Section 69–36–7(D) is designed to insure that new or expanded operations within an existing permit area are regulated under the stricter scheme applicable to new units rather than treating them simply as part of an existing mining operation. It argues that, consistent with the intent of the legislation, it ultimately negotiated with Copar to treat the El Cajete mine as a new unit under Section 69–36–7(D) rather than as part of an existing mining operation.

{15} MMD and the other appellants also argue collectively that the statutory scheme of the Act provides for a broad exercise of discretion so the Director and the Commission can balance the competing interest of environmental stewardship with the exploration, mining, or extraction of minerals that are vital to the welfare of New Mexico. They point out that this discretion is not unlimited and that the public notice and

hearing procedures provided for in the Act as well as the review process limit the exercise of this discretion.

### Standard of Review

{16} Because the issue on appeal concerns the interpretation of the Act and specifically whether the Director and the Commission had authority under the Act to modify Copar's permit in order to expand the permitted area, the issue raises a question of law that this Court reviews de novo. *See generally Cox v. Mun. Boundary Comm'n,* 120 N.M. 703, 705, 905 P.2d 741, 743 (Ct.App.1995). This Court will set aside the actions of the Director and the Commission only if they are arbitrary, capricious, an abuse of discretion, not supported by substantial evidence in the record, or otherwise not in accordance with law. *See* NMSA 1978, § 69–36–16(F) (1993).

### The Mining Act and Legislative Intent

{17} In construing a statute, this Court looks to the plain meaning of the statutory language as well as its purpose, and we assume that the legislative intent is expressed by the ordinary meaning of the language. *See Old Abe Co. v. New Mexico Mining Comm'n,* 1995–NMCA–180, ¶ 18, 121 N.M. 83, 908 P.2d 776. When a statute is unclear, we afford an agency's interpretation substantial weight. *See id.* ¶¶ 18, 19. When an agency interprets a rule or regulation in a manner that complies with the statute, this Court will affirm the regulation. *See id.*

{18} No provision in the Mining Act directly addresses whether the Director has authority to expand an existing permit area. Section 69–36–7(D) allows for permit modifications "located within the permit area of an existing mining operation" and not identified in the permit. On its face, the statute neither authorizes nor prohibits modifying a permit to allow an expansion of the existing permit area. *See also* § 69–36–7(K) (providing the Commission shall adopt regulations that ensure public notice and hearing on each application to issue, renew, or revise a permit for a new or existing mining operation without expressly authorizing or prohibiting re-

vising a permit to expand the area of an existing mining operation).

{19} Because the plain language of the Mining Act provides no guidance, the legislative intent is unclear. When the statute is unclear, this Court will give substantial weight to the Commission's interpretation of the statute. *See Old Abe,* 1995–NMCA–180, ¶¶ 18, 19, 908 P.2d 776. We note, without specifically addressing, a similar view of deference to agency interpretation expressed by the United States Supreme Court. *See Chem. Mfrs. Ass'n v. Natural Res. Def. Council, Inc.,* 470 U.S. 116, 126, 105 S.Ct. 1102, 84 L.Ed.2d 90 (1985) (stating that the court should defer to the administrative agency's view of a statute unless the legislative history or purpose and structure of the statute "clearly reveal a contrary intent"); *Chevron, U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

{20} Although the legislative intent on the specific issue at hand is not clear, the Mining Act as a whole gives broad discretionary authority to the Commission and the Director to implement the purposes of the Mining Act. *See Old Abe,* 1995–NMCA–180, ¶¶ 28–29, 908 P.2d 776. In ruling on the constitutionality of various regulations adopted by the Commission, this Court has noted that especially in the field of environmental protection it is impossible to anticipate all the possible factual situations that may arise under a given set of regulations. *See id.* ¶ 27. Because these regulations are promulgated in response to broad legislative concern, the standards developed by the Commission are necessarily general and somewhat flexible. *See id.* "Only by granting certain discretion to the Director to administer and enforce the regulations could the Act be effectively implemented." *See id.* ¶ 29. The discretion is not unlimited, however, and the Mining Act itself provides for administrative and judicial review of the Director's decisions. *See* NMSA 1978, §§ 69–36–15(A) & –16 (1993).

{21} Although the legislature has not expressed a specific intent with regard to expanding an existing permit area, we conclude the legislature implicitly delegated au-

thority for these decisions to MMD and the Commission. The subject falls within the parameters of matters that were expressly delegated, including permit modifications for existing mining operations and regulating the consequences of those modifications. The question before this Court then becomes whether the Commission's decision upholding MMD was, in the context of this case, arbitrary and an abuse of discretion.

{22} The Rules adopted by the Commission to implement the Mining Act, like the Act itself, do not specifically address the issue of expanding the area of an existing permit. However, the section of the Rules relating to "Permit Application Requirements" does contain a subsection which states:

> Where physically separate but interrelated mining operations are located in close proximity to each other and are under the control of the same owner or operator, the applicant may request or the Director may determine to issue one permit for all of the operations and require only one permit application and closeout plan.

Rule 502.F. MMD relies on this rule as authority for issuing one (revised) permit for both mines located "in close proximity to each other."

{23} The Sierra Club acknowledged during oral argument before this Court that to the extent Copar had valid mining claims, the initial permit could have defined a larger permit area so as to include both mining operations. This, of course, was Copar's intent from the very beginning. If the original permit area had included the entire area for which Copar had valid mining claims, then El Cajete might have been permitted as part of an existing mine. If Copar had succeeded in permitting El Cajete as an existing mine, it would not have been required to meet the more stringent regulatory standards for either a new unit or a new mining operation. At the most, El Cajete would have been permitted as a new unit located within the permit area of an existing mining operation, which is what MMD eventually achieved.

{24} If MMD and the Commission could have taken direct action initially, by putting both mines in one permit area and then permitting El Cajete as a new unit, we fail to see how MMD and the Commission are unreasonable by applying their own rules in such a manner as to achieve the same result indirectly, by a two-step process. The reasonableness of the Director's actions is further evident when we consider that the Director promised Copar new-unit status for El Cajete when Copar agreed to withdraw its initial permit application that included both mines.

{25} The Director's testimony before the Commission underscores the breadth of her discretion under the Act and the Rules and the reasonableness of her interpretation of that discretion. The Director testified that the permitting process in this case was the result of extensive negotiations and careful deliberation on the part of MMD. The Director further testified that the change from Copar asking to have both units included in the original permit area, and the ultimate permitting of the El Cajete site as a new unit of the modified Las Conchas permit, was a result of the Director exercising her discretion to require a higher regulatory standard for the El Cajete site than Copar was at first willing to concede. The Director took this action in the face of concrete apprehensions that Copar might win the right to have El Cajete permitted as an existing mine and be subject to much less stringent regulations.

{26} The Director negotiated with Copar and engaged in the two-step permitting process, first permitting the Las Conchas site so the reclamation efforts already underway at the Las Conchas site could be overseen by MMD, and then modifying the Las Conchas permit to include the El Cajete site as a new unit within the Las Conchas permit area. Those negotiations resulted in the El Cajete site being permitted as a new unit and subject to more stringent regulations than if the site had been included in the original permit area. This exercise of discretion and the Commission's approval of this action serves the dual and often conflicting purposes of the Mining Act. By requiring Copar to adhere to a higher standard of regulation than may have been legally required, MMD promoted the responsible use and reclamation of that site.

{27} The Sierra Club also stated during oral argument that if it were successful in its challenge to the Commission's order, Copar would have to stop its mining operations at El Cajete and would be required to complete the one-year baseline study and seek a permit for El Cajete as a new mining operation. In that event, the Sierra Club intimated that it might challenge Copar's application for a new mining permit by seeking a determination that Copar is a "bad actor." We note, however, that Copar has been able to obtain a new mining permit for a minimal impact mine, and the Director testified before the Commission that the bad actor provision would not bar Copar from attempting to permit the El Cajete mine.

{28} Finally, we recognize the Sierra Club's concern that allowing the permit revision to stand in this case might invite a "leapfrogging" effect of endlessly expanding existing mining operations. The Sierra Club's anxiety in this respect is well-founded, and any interpretation of this opinion by MMD, the Commission, or the mining industry that would invite such a wholesale circumvention of the Act would be a grave miscalculation. We write narrowly to address a rather unique fact situation that compelled the Director to act in the responsible exercise of her discretion as evidenced in this case. Concern over the potential abuse of that discretion, no matter how justified in the abstract, does not warrant denying its existence.

## CONCLUSION

{29} Based on the unique factual circumstances of this case, we determine that the decisions to modify the Las Conchas permit to include the area of the proposed El Cajete mining operation and to permit the El Cajete mining operation as a new unit of an existing mining operation were a sound exercise of the discretion granted to the Director and the Commission under the Mining Act. The district court having determined to the contrary, we reverse and remand for entry of an order affirming the Commission's September 1998 order, which affirmed the revision of the permit.

{30} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE, Judge, CELIA FOY CASTILLO, Judge.