This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                        NO.   29,508

**GILBERT TURRIETTA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Albert S. Murdoch, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Santa Fe, NM
Linda Yen, Assistant Public Defender
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**VIGIL, Judge.**

Defendant appeals his convictions in Metropolitan Court for battery against a household member and assault against a household member. [RP 118-19] These convictions were affirmed by the district court in an on-record appeal. [RP 202] Defendant appealed to our Court, and we issued a notice proposing to affirm. Defendant responded with a memorandum in opposition. We have considered the arguments in the memorandum but we are not persuaded the analysis in our notice is incorrect. We affirm.

**BACKGROUND**

There was evidence that Defendant and his girlfriend, Beryl Jean Garcia, had been having an argument. [MIO 11] When Ms. Garcia left the house, Defendant followed her outside with an axe and told her to come back inside so they could take care of the problems they were having. [MIO 11] Later, after she had gone to bed, Defendant came into the bedroom and threw an axe down very close to her head. [MIO 12] Still later in the evening, Defendant forced her to the ground and slapped her face several times. [MIO 13] There was evidence that when the sheriff's officer was dispatched he found her shaking and crying, with a bruise around her right eye. [MIO 14] This evidence formed the basis for Defendant's convictions.

**DISCUSSION**

## A. Speedy trial

Defendant first argues that his right to speedy trial was violated. [DS 25] To determine whether a defendant's constitutional right to speedy trial has been violated, we apply the four-factor balancing set forth in *Barker v. Wingo*, 407 U.S. 514 (1972). *State v. Plouse*, 2003-NMCA-048, ¶ 34, 133 N.M. 495, 64 P.3d 522. Under the *Barker* test, we balance, in light of the facts and circumstances of the particular case, (1) the length of the delay, (2) the reasons for the delay, (3) the assertion of the right, and (4) the prejudice to the defendant. *Plouse*, 2003-NMCA-048, ¶ 34. The first factor, the length of the delay, involves a two-fold inquiry. *State v. Laney*, 2003-NMCA-144, ¶ 11, 134 N.M. 648, 81 P.3d 591. We first decide whether the delay is presumptively prejudicial and, if it is, we then balance the four factors to assess whether the defendant's constitutional rights have been violated. *State v. Garza*, 2009-NMSC-038, ¶ 23, ___ N.M. ___, 212 P.3d 387.

We are deferential to the trial court's fact finding, but independently examine the record to determine whether a speedy trial violation has taken place. *State v. Tortolito*, 1997-NMCA-128, ¶ 6, 124 N.M. 368, 950 P.2d 811. We analyze speedy trial claims on a case-by-case basis, examining all four factors in order to weigh the conduct of both the prosecutor and defense, with no one factor

as talismanic. *See State v. Urban*, 2004-NMSC-007, ¶ 11, 135 N.M. 279, 87 P.3d 1061.

**1.      Length of Delay**

In the present case, Defendant's right to a speedy trial attached  on October 19, 2006, when he was arrested on these misdemeanor charges. [DS 1]   *See State v. Lujan*, 2003-NMCA-087, ¶ 8, 134 N.M. 24, 71 P.3d 1286 (stating that the right to a speedy trial attaches when the defendant becomes "accused").  His trial occurred on July 30, 2007. [DS 7]  Therefore, we are dealing with a delay of just under nine-and-a-half months.

We accept that this is a simple case, and therefore the delay was presumptively prejudicial.  *See Salandre v. State*, 111 N.M. 422, 428 & n.3, 806 P.2d 562, 568 & n.3 (1991) (concluding that a minimum of nine months delay is necessary to trigger further inquiry into the claim of a violation of the right to speedy trial in simple cases, twelve months in cases of intermediate complexity, and fifteen months in complex cases).  We recognize that our Supreme Court recently expanded the time limits, holding that presumptive delay in a simple case is now twelve months, *see Garza,* 2009-NMSC-038, ¶ 47, but that case applies to motions filed after August 13, 2007.  *Id.*  ¶ 50.  Accordingly, the burden shifts to

the State to show that Defendant's constitutional rights have not been violated. *See State v. Maddox,* 2008-NMSC-062, ¶ 12, 145 N.M. 242, 195 P.3d 1254.

In determining the weight to be given to the length of delay, we consider the extent to which the delay stretches beyond the bare minimum needed to trigger examination of the claim. *See State v. Stock,* 2006-NMCA-140, ¶ 13, 140 N.M. 676, 147 P.3d 885. In this case, that delay stretched approximately two weeks beyond the nine-month period establishing presumptive prejudice. The delay therefore weighs only slightly against the State. *Garza*, 2009-NMSC-38, ¶ 24.

**2.     Reasons for Delay**

We understand that some of the delay was caused by the State's inability to provide Victim for an interview until June 27, 2007. [RP 183; DS 8-9] Some of the delay from April 25 until June 27 appears to have been caused by the fact that pretrial matters needed to be considered. [DS 9] There is no showing that the State engaged in deliberate tactics designed to thwart Defendant's right to a speedy trial. Therefore, we will weigh the reason for delay factor against the State, although not heavily. *See State v. Marquez,* 2001-NMCA-062, ¶¶ 13, 17, 19, 130 N.M. 651, 29 P.3d 1052 (stating that negligence on the part of the State, resulting in delay, should weigh against the State although not heavily).

**3.     Assertion of the Right**

Defendant filed his speedy trial motion on the day of trial. [DS 8]  This does not persuade us to weigh Defendant's assertion of the right in his favor.  *See State v. Coffin,* 1999-NMSC-038, ¶ 67, 128 N.M. 192, 991 P.2d 477 (stating that request for speedy trial, filed two weeks before trial, was not sufficient to weigh this factor in the defendant's favor).

**4.	Prejudice**

We consider three types of prejudice relevant to the speedy trial analysis: (1) oppressive pretrial incarceration; (2) the accused's anxiety and concern; and (3) the possibility of an impairment to the defense.  *See Plouse*, 2003-NMCA-048, ¶ 51.

We conclude that this factor does not weigh in Defendant's favor.  We are presented with no tangible prejudice to his defense and no evidence of Defendant's anxiety and concern.  It appears that Defendant was not even incarcerated for most of the time, as he was released on bond. [RP 14-15] It further appears that on April 25, 2007, Defendant was arrested on new charges  [RP 32-33, 36], but was released to a community corrections program on or about May 22, 2007. [RP 184, 188] Consequently, our notice proposed that Defendant was not incarcerated for most of the period of delay.  Defendant takes issue with our proposal, arguing that he was

6

in custody between April 25 and June 5, 2007. Nevertheless, some of his incarceration appears to have been based on other charges, as well. [MIO 11]

These facts do not persuade us that Defendant has demonstrated prejudice. *See Laney,* 2003-NMCA-144, ¶ 29 (noting that some degree of oppression and anxiety is inherent for every defendant who is jailed while awaiting trial). Therefore, we do not weigh this factor in Defendant's favor.

In conclusion, we are presented with a delay that is only approximately two weeks beyond the nine-month period of presumptive prejudice. Reasons for delay weigh only slightly against the State. Defendant's assertion of the right is entitled to no weight, and he has not shown prejudice. We propose to conclude that, on balance, Defendant's right to a speedy trial was not violated.

## B.     Prosecutorial Misconduct

Defendant contends that it was fundamental error for the prosecutor to ask Defendant whether Victim and investigating officer were lying. [DS 17-18, 25; MIO 18, 29-32] In his memorandum Defendant has provided us with more detail about the questions that were asked, [MIO 18] and we agree that these questions are impermissible. *See State v. Flanagan,* 111 N.M. 93, 97, 801 P.2d 675, 679 (Ct. App. 1990). However, there was no objection and, consequently, we review this issue for fundamental error. *See State v. Trujillo*, 2002-NMSC-005, ¶ 52, 131

7

N.M. 709, 42 P.3d 814. "Fundamental error only applies in exceptional circumstances when guilt is so doubtful that it would shock the judicial conscience to allow the conviction to stand." *State v. Baca*, 1997-NMSC-045, ¶ 41, 124 N.M. 55, 946 P.2d 1066, *overruled on other grounds by State v. Belanger*, 2009-NMSC-025, 146 N.M. 357, 21 P.3d 783. "Prosecutorial misconduct rises to the level of fundamental error when it is 'so egregious' and 'had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial.'" *State v. Allen*, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 P.2d 728 (quoting *State v. Duffy*, 1998-NMSC-014, ¶¶ 46-47, 126 N.M. 132, 967 P.2d 807).

We find no fundamental error. There is ample evidence to support the jury's verdict, [DS 10-20] and we cannot conclude that Defendant's guilt is so doubtful that it would shock the judicial conscience to allow the conviction to stand. *See Baca*, 1997-NMSC-045, ¶ 41. In the context of this case, we are not inclined to say that the prosecutor's questions were so egregious and had such a persuasive and prejudicial effect on the jury's verdict that Defendant was deprived of a fair trial. *Allen*, 2000-NMSC-002, ¶ 95.

**C.    Jury Instruction**

Defendant contends that the instruction on assault against a household member

was missing an essential element because it did not contain an intent requirement. [DS 25] Defendant contends that under the relevant uniform jury instruction, UJI 14-303 NMRA, that element would be that Defendant "intended to touch or apply force." [DS 21]

"The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved we review the instructions for reversible error. If not, we review for fundamental error. Under both standards, we seek to determine whether a reasonable juror would have been confused or misdirected by the jury instruction." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (internal quotation marks and citations omitted).

Defendant claims that he objected below, [DS 20] but he does not indicate that he tendered a correct instruction, and the record does not reflect that he tendered one. [MIO 32-33] There is no suggestion that the court was clearly alerted to the argument Defendant now makes on appeal, or that the court understood that argument was being presented. *See State v. Jernigan,* 2006-NMSC-003, ¶ 10, 139 N.M. 1, 127 P.3d 537 (stating that generally, to preserve an error regarding instructions, a correct instruction must be tendered, unless it is clear that the defendant has alerted the court to the problem and the court understands

9

the argument). If anything, Defendant argued that "intent doesn't matter." [DS 21] We therefore disagree with Defendant's suggestion that the issue is preserved. Consequently, we review this claim for fundamental error. *See Allen*, 2000-NMSC-002, ¶ 95 ("When the trial court had no opportunity to rule on [a claimed error] because the defendant did not object in a timely manner, we review the claim on appeal for fundamental error.").

We find no fundamental error. "A jury instruction standing by itself may appear defective. However, when considered in context of the other instructions given to the jury it may 'fairly and accurately state the applicable law.'" *State v. Parish*, 118 N.M. 39, 41, 878 P.2d 988, 990 (1994) (quoting *State v. Hamilton*, 89 N.M. 746, 750, 557 P.2d 1095, 1099 (1976)). We consider jury instructions "as a whole, not singly." *Id.* at 41, 878 P.2d at 990. Even if the jury instruction did not contain the requirement that Defendant intend the act, the jury was given the general intent instruction, which required that Defendant intended to do the act. We hold that the instructions, when considered as a whole, adequately instructed the jury.

We also conclude that the error was not fundamental because the element of intent was not disputed. A missing element requires reversal only when that element is in dispute. *See State v. Orosco*, 113 N.M. 780, 782-83, 833 P.2d 1146,

10

1148-49 (1992) (holding that the trial court's failure to instruct on an essential element of unlawfulness of the act did not constitute fundamental error where the element of unlawfulness is not in dispute).  Here, that element was not in dispute. Defendant's defense was that the incidents did not happen at all. [DS 14-18] To support his theory he and his brother testified that the two violent incidents described by Victim never happened.   [DS 14-20] Defendant's other witnesses simply gave their opinion that Victim was not a truthful person. [DS 20] Defendant never claimed that he committed the act, but lacked intent. Accordingly, the doctrine of fundamental error would not require reversal.  *See id.* at 783, 833 P.2d at 1149.

**D.	Special Interrogatory**

Defendant argues that it was fundamental or structural error when the court failed to present a special interrogatory on the basis for its verdict for the assault charge. [DS 26; MIO 37-41]  We reject this argument.

Defendant does not indicate that he raised this argument below by asking the court to present special interrogatories.  In order to preserve an issue for appeal, defendant must make a timely objection that specifically apprises the trial court of the nature of the claimed error and invokes an intelligent ruling thereon.  *State v.*

11

*Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280.  Therefore, we propose to hold that the error has not been preserved.

To the extent he attempts to avoid this shortcoming by relying on fundamental or structural error [MIO 37-41], we propose to reject his contentions. As we have mentioned, fundamental error only applies in exceptional circumstances when guilt is so doubtful that it would shock the judicial conscience to allow the conviction to stand.  *See Baca*, 1997-NMSC-045, ¶ 41.  Structural error applies only in a "very limited class of cases" and consists of error that undermines the integrity of the trial process itself.  *See  State v. Padilla,* 2002-NMSC-016, ¶ 16, 132 N.M. 247, 46 P.3d 1247 (collecting cases).

Defendant's argument is premised on the idea that he could not be convicted of an attempted misdemeanor.  He relies on NMSA 1978, § 30-28-1 (1963). However, that statute does not appear to be applicable here.  It is a general statute simply providing that no person "shall be sentenced for attempt to commit a misdemeanor."  In contrast, the Legislature has specifically provided for the crime of assault on a household member based on an attempted battery.  *See* NMSA 1978, § 30-3-12 (A)(1) (1995).  It appears to us that this statute, as the more specific, would trump Section 30-28-1, the more general statute.  *See State v. Blevins,* 40 N.M. 367, 368-69, 60 P.2d 208, 209 (1936) (holding that where a

general and a more specific criminal statute exist, the specific statute applies). Consequently, Defendant's conviction and corresponding sentence under Section 30-3-12(A) does not appear to present error, much less fundamental or structural error.

**E.      Cumulative Error**

Defendant argues that the cumulative effect of the errors denied him a fair trial. [DS 26; MIO 41-42] We disagree.  The doctrine of cumulative error assumes multiple errors that, in combination, place the fairness of the trial in doubt.  "The doctrine of cumulative error requires reversal when a series of lesser improprieties throughout a trial are found, in aggregate, to be so prejudicial that the defendant was deprived of the constitutional right to a fair trial." *State v. Duffy*, 1998-NMSC-014, ¶ 29, 126 N.M. 132, 967 P.2d 807, *modified on other grounds by State v. Gallegos*, 2007-NMSC-007, ¶ 17, 141 N.M. 185, 152 P.3d 828.  The cumulative error doctrine is strictly applied, and may not be successfully invoked if the record as a whole demonstrates that the defendant received a fair trial.  *State v. Trujillo*, 2002-NMSC-005, ¶ 63, 131 N.M. 709, 42 P.3d 814.

Here, the only error appears to be the prosecutor's impermissible questioning.   As we have discussed, we propose to find no error in Defendant's

other claims.  With nothing more than the impermissible questions by the prosecutor, we hold that cumulative error has not been established.

**F.       Good Time Credit**

Defendant argues that the metropolitan court judge could not sentence him to 544 days straight time, thereby eliminating his right to earn good time credit. [MIO 42-56] We rejected this argument in *State v. Wyman,* 2008-NMCA-113, ¶¶ 4-7, 144 N.M. 701, 191 P.3d 559, *cert. granted,* 2008-NMCERT-008, 145 N.M. 255, 195 P.3d 1267. *Wyman* holds that under Section 33-3-9(A) (1995), a court may, at the outset, provide that a defendant shall not be entitled to earn good time. Defendant argues that *Wyman* was wrongly decided. [MIO 42-56] We are not persuaded that we should overrule *Wyman* here.

For all of these reasons, Defendant's convictions and sentence are affirmed.

**IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**CELIA FOY CASTILLO, Judge**

15