IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2021-NMSC-007

Filing Date:   January 28, 2021

No. S-1-SC-37803

BOARD OF COUNTY COMMISSIONERS,
HARDING COUNTY; MOSQUERO MUNICIPAL
SCHOOLS, BOARD OF EDUCATION;
and ROY MUNICIPAL SCHOOLS, BOARD
OF EDUCATION,

       Petitioners-Respondents,

v.

NEW MEXICO TAXATION AND REVENUE
DEPARTMENT and STEPHANIE SCHARDIN
CLARKE, Secretary of the New Mexico
Taxation and Revenue Department,

       Respondents-Petitioners.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Francis J. Mathew, District Judge**

Released for Publication March 2, 2021.

Hector H. Balderas, Attorney General
David E. Mittle, Special Assistant Attorney General
Santa Fe, NM

for Respondents-Petitioners

Gallegos Law Firm, P.C.
Jake Eugene Gallegos
Michael Joseph Condon
Santa Fe, NM

for Petitioners-Respondents

OPINION

**THOMSON, Justice.**

**{1}**     The Harding County Board of County Commissioners, the Mosquero Municipal Schools Board of Education, and the Roy Municipal Schools Board of Education (collectively, Petitioners) petitioned the First Judicial District Court for a writ of mandamus to compel the New Mexico Taxation and Revenue Department and the department's Secretary Stephanie Schardin Clarke (collectively, the Department) to establish values for two high-voltage transmission lines in Harding County and report those values to the Harding County Assessor (Assessor) so that property taxes could be assessed on the lines.

**{2}**     Following a hearing on the petition, the district court issued its peremptory writ of mandamus (Peremptory Writ) to the Department and ordered the Department to "discharge [its] legal duties and obligations" in order to allow the Assessor to assess property taxes on the lines. Approximately six months later, the Department filed a certificate of compliance, representing that it had fully complied as ordered.

**{3}**     Disputing that the Department had complied as ordered, Petitioners filed a motion for an order to show cause. Petitioners also requested "attorney fees and costs incurred in securing compliance with the [Peremptory] Writ." After full briefing and a hearing, the district court held the Department in contempt for failing to comply with the district court's order and awarded Petitioners their costs and fees related to the order to show cause. The Department appealed and sought review of the Peremptory Writ, the contempt holding, and the award of costs and fees.

**{4}**     The Court of Appeals declined to review the merits of the Peremptory Writ, concluding that the Department failed to timely appeal that final order. *Bd. of Cnty. Comm'rs, Harding Cnty. v. N.M. Tax'n and Revenue Dep't*, A-1-CA-36305, mem. op., ¶ 24 (May 24, 2019) (nonprecedential). However, the Court of Appeals reviewed the "issues relating to the Contempt Order and the Order for Fees and Costs" and affirmed the district court. *Id.* ¶¶ 25, 41, 50. The Department petitioned this Court for certiorari review pursuant to Rule 12-502 NMRA. We granted certiorari, and we now affirm.

## I.     BACKGROUND

**{5}**     Underlying this appeal is the district court's determination that the Department has a statutory duty to establish a value for two high-voltage transmission lines in Harding County and to report that value to the Assessor for tax years 2009 through 2015.[1] The cost of construction for these lines was paid by Tri-State Generation & Transmission Association (Tri-State). The Hess line was completed in 2008, and the Whiting line was completed in 2013. After the lines were constructed, Tri-State transferred the ownership of those lines to Springer Electric Cooperative, Inc.

---

[1]The Court of Appeals did not review the district court's construction of the Property Tax Code because the Department chose not to timely appeal the merits of the Peremptory Writ. As a result, whether the district court correctly construed those statutes is not properly before this Court, and we do not address that question in this opinion. Nonetheless, a discussion of the circumstances that precipitated the Peremptory Writ is required to provide a context for our analysis of whether the Department complied with the district court's orders in the Peremptory Writ.

(Springer)—apparently at no cost to Springer—and Springer owned both the Hess line and the Whiting line during the tax years in question.

{6}     In New Mexico, "[a] tax is imposed upon all property subject to valuation for property taxation purposes under Article 36 of Chapter 7 NMSA 1978." NMSA 1978, § 7-37-2 (1982). The Hess line and the Whiting line are taxable properties if they are subject to valuation and not exempt from taxation. *See* NMSA 1978, § 7-36-7 (2008) ("Property subject to valuation for property taxation purposes.").

{7}     Generally, property that is taxable must be valued and the "value allocated to the governmental units in which the property is located" so that property taxes can be assessed and collected. *See* NMSA 1978, § 7-36-14(B), (C) (1985). The Department "is responsible and has the authority" to value these two electrical "transmission line[s]" for property taxation purposes. *See* NMSA 1978, § 7-36-2(B)(4), (C)(3) (1995) ("Allocation of responsibility for valuation and determining classification of property for property taxation purposes; county assessor and department."). In addition, the Department is empowered to investigate as necessary to enforce the Property Tax Code. *See* NMSA 1978, § 7-38-2 (1973) ("Investigative authority and powers.").

{8}     As part of the process for valuation, assessment, and collection of property tax, Springer is required to annually report all of its "property subject to valuation for property taxation purposes" to the Department. NMSA 1978, § 7-38-8 (2007). However, Springer did not report the value of the Hess line in 2009 through 2015, or the Whiting line in 2013 through 2015, apparently because it takes the position that the lines are exempt from taxation for property tax purposes.

{9}     Regardless of whether Springer reports a value for all of its property, including the Hess line and the Whiting line, the Department is required to value that property and annually "mail a notice to each property owner informing the property owner of the net taxable value of the property owner's property that has been valued for property taxation purposes." NMSA 1978, § 7-38-20(B) (2012). Upon receipt of the notice of valuation, the "property owner may protest the value" assigned by the Department. NMSA 1978, § 7-38-21(A) (2015). And the Department is obliged to resolve "[a]ll protests . . . within one hundred twenty days of the date the protest is filed unless the parties otherwise agree." NMSA 1978, § 7-38-23(C) (2015).

{10}    After the valuation process concludes, the Department must certify the value to the county wherein the property is located, NMSA 1978, § 7-38-30 (1973) ("Department to allocate and certify valuations to county assessors."), which in this case is Harding County, so that the Assessor may prepare the tax schedule for Harding County property subject to taxation, NMSA 1978, § 7-38-35 (2007), and in conjunction with the Harding County Treasurer, may "prepare and mail property tax bills" to the proper party, NMSA 1978, § 7-38-36 (1977) ("Preparation and mailing of property tax bills."), which in this case is Springer.

{11}    Petitioners took the position that the transmission lines are taxable and in 2012 began sending requests to the Department to perform its duty to perform valuations of

the lines. The record does not evince whether the Department initially took a position on the taxability of the transmission lines, but the record is clear that the Department did not issue a notice of valuation for tax years 2009 through 2011. *See* NMSA 1978, § 7-35-2(E) (1994, amended 2018) (defining "net taxable value" as "the value of property upon which the tax is imposed and is determined by deducting from taxable value the amount of any exemption authorized by the Property Tax Code"). Because the Department never completed the valuation portion of the process, no property tax could be assessed, imposed, or collected by Harding County.

**{12}** In 2012, a Department attorney issued a memorandum that concluded that the Hess line "should be assessed for property tax[ation]." Also in 2012, the Department issued its first notice of valuation for the Hess line. However, Petitioners continued to be unable to assess, impose, or collect any property tax because Springer protested the valuation each year from 2012 through 2015, and the Department agreed to indefinitely waive the time limit for resolving the Hess line protests. *See* § 7-38-21 (concerning a property owner's right to protest the valuation); § 7-38-23(C) (concerning the parties' option to waive the deadline for resolution of a protest). As a result of the indefinite delay, no property tax was imposed or collected for the Hess line for tax years 2012, 2013, 2014, or 2015.

**{13}** In 2013, construction on the Whiting line was completed. Although ownership of the line was not clear, Petitioners believed that Springer was the owner and informed the Department. Nonetheless, the Department did not issue Springer a notice of valuation for the Whiting line in the relevant tax years, despite the fact that it had issued notices of valuation for the Hess line in those years. Nor does it appear that the Department investigated whether Springer owned the Whiting line.

**{14}** Since the valuation process for the Hess line and the Whiting line had to be concluded before any property tax could be assessed, imposed, and collected, Petitioners sought a writ of mandamus from the district court to compel the Department to conclude the pending protests of valuations for the Hess line that commenced in 2012 and to issue the annual notices of valuation for the Hess line before 2012 and for the Whiting line beginning in 2013. The district court first issued an alternative writ of mandamus according to NMSA 1978, Section 44-2-7 (1884) ("When the right to require the performance of the act is clear, and it is apparent that no valid excuse can be given for not performing it, a peremptory mandamus may be allowed in the first instance; in all other cases the alternative writ shall be first issued."), that

> command[ed] that [the Department] forthwith discharge [its] lawful duty . . . in conformance with the terms of NMSA [1978, Section] 7-36-29 [(1975, amended 2016)] for all years in which the properties have been situate in Harding County . . . [or] Show Cause, if any [it has], . . . why [the Department has] not performed the lawful duties so required of [it].

**{15}** The Department responded and admitted that "[a]ssigning a value to certain property for taxation purposes is a mandatory duty." However, the Department

"den[ied]" having a nondiscretionary duty to perform the valuations of the Hess and Whiting lines or "to report the values to the County Assessor."

**{16}** Following a hearing, the district court issued the Peremptory Writ and determined that the Hess line and the Whiting line "must be valued and assessed for property tax" because they were taxable, relying in part on the 2012 Department memorandum that concluded that the lines were not exempt from property taxation. The district court also determined that the Department's indefinite waiver of the time limit to decide the Hess line protest amounted to a refusal to perform its mandatory duty. The district court ordered the Department to complete the valuation processes for the Whiting line and for the Hess line "for years 2009-2011," timely conclude any protest, and certify the values to the Assessor for preparation of a bill for the property tax due. The district court also ordered the Department to present the court's legal determination "on the taxability" of the subject property "to the [Hess line protests] hearing officer" of the New Mexico Administrative Hearings Office (AHO). The Department did not provide the AHO hearing officer in the Hess line protest with a copy of the Peremptory Writ as the district court had ordered.

**{17}** Because Petitioners would share in revenue generated by the assessment of property tax on the Hess line, they attempted to intervene in the Springer protests ostensibly to argue the value of the Hess line and that it was not exempt from tax. Both the Department and Springer opposed allowing Petitioners to intervene. Petitioners later withdrew their request to intervene after a "representative of Harding County" emailed a copy of the Peremptory Writ to the AHO.

**{18}** Despite knowing of the district court's ruling on taxability of the Hess line, the hearing officer concluded that it was not bound by the district court's legal determination that the property was taxable. The hearing officer conducted its own statutory analysis and determined that the phrase "actual cost of acquisition or construction" used in the definition of "tangible property cost" excludes the cost of construction paid by Tri-State for the Hess line. *See* NMSA 1978, § 7-36-29(B)(7) (1975, amended 2016) (defining "tangible property cost"). The hearing officer concluded that despite the substantial cost of construction paid by Tri-State (which the Department had used to calculate the notices of valuation), "the tangible property cost valuation of the Hess line for purposes of Section 7-36-29 [(1975)] is zero" because Springer did not pay Tri-State to acquire ownership of the Hess line.

**{19}** The Department declined to appeal the hearing officer's findings despite knowing the findings contradicted the district court's construction of Section 7-36-29(B)(7) (1975). Instead, the Department certified to the district court that it complied with its order because the AHO resolved the Hess line protests, and the Department was under no further obligation to act. The Department also certified that the Whiting line "does not have any value" for tax assessment purposes as that matter, "involves the same parties and issues as the [Hess] line."

**{20}** Petitioners filed a motion for an order to show cause, arguing that the Department had not complied with the Peremptory Writ. After full briefing and a hearing,

the district court found that the Department "willfully and intentionally refused to perform the duties and obligations required of [it] by law" and restated the Department's obligation to fully "comply with the terms of the [Peremptory] Writ . . . to enable the assessment and collection of the subject property taxes from Springer." The district court also awarded Petitioners the costs and fees they incurred when Petitioners sought to compel the Department to comply with the Peremptory Writ. The Department appealed to the Court of Appeals.

## II.     ANALYSIS

{21}    We address three issues: (1) whether the Court of Appeals abused its discretion by declining to address the merits of the Peremptory Writ, (2) whether the district court abused its discretion by holding the Department in contempt, and (3) whether the district court abused its discretion by determining that Petitioners' costs and fees were reasonable. *Bd. of Cnty. Comm'rs*, A-1-CA-36305, mem. op., ¶¶ 24-25, 41, 50. Although we clarify that the Court of Appeals statement of law concerning its jurisdiction to review the merits of the Peremptory Writ is inaccurate, we affirm the Court of Appeals for the reasons that follow.

### A.     The Court of Appeals Did Not Abuse Its Discretion by Declining to Review the Merits of the Peremptory Writ

{22}    The Court of Appeals concluded that "the Department's failure to timely appeal the Peremptory Writ deprives us of jurisdiction to consider its merits." *Bd. of Cnty. Comm'rs*, A-1-CA-36305, mem. op., ¶ 24. Although we affirm the decision of the Court of Appeals not to review the merits of the Peremptory Writ, we feel it is important to clarify that the untimeliness of the appeal did not deprive the Court of Appeals "of jurisdiction." Instead, as we explain, the Court of Appeals properly declined to exercise its discretion——a mandatory precondition to the exercise of jurisdiction——to excuse the Department's failure to file a timely appeal.

{23}    The "lack of subject matter jurisdiction precludes the possibility of hearing a case." *Trujillo v. Serrano*, 1994-NMSC-024, ¶ 14, 117 N.M. 273, 871 P.2d 369. However, a party's failure to file a timely appeal does not divest the Court of Appeals or this Court of subject matter jurisdiction. We have previously held that it is "possible for an appellant to file a late notice of appeal and still invoke the [appellate] court's jurisdiction." *Id.* This is because the timely filing of a notice of appeal does not grant jurisdiction to hear the case; more precisely, the filing of a notice of appeal is a "mandatory precondition to the exercise of jurisdiction." *Govich v. N. Am. Sys., Inc.*, 1991-NMSC-061, ¶ 12, 112 N.M. 226, 814 P.2d 94. Therefore, an appellate court may "exercise discretion to excuse or justify any improper attempt to invoke [its] jurisdiction," and an untimely appeal is not an absolute bar under certain circumstances. *Id.*

{24}    The question before this Court is whether the Court of Appeals abused its discretion by declining to entertain the untimely appeal of the Peremptory Writ. *See Trujillo*, 1994-NMSC-024, ¶ 9 ("[We review a] court's decision not to excuse a party's

failure to file a timely appeal[,] . . . applying an abuse of discretion standard."). We conclude that the Court of Appeals did not abuse its discretion.

**{25}** The decision to dismiss an appeal "must be determined on a case-by-case basis," and "[i]t is incumbent on the parties to strictly adhere to our clearly articulated rules of procedure." *Trujillo*, 1994-NMSC-024, ¶¶ 15, 19. However, an appellate court may "exercise its discretion and entertain an appeal even though it is not timely filed" if "unusual circumstances beyond the control of the parties are present." *Schultz v. Pojoaque Tribal Police Dep't*, 2010-NMSC-034, ¶ 18, 148 N.M. 692, 242 P.3d 259 (internal quotation marks and citation omitted).

**{26}** The district court's Peremptory Writ was clearly a final judgment on proceedings in mandamus, "reviewable by appeal or writ of error in the same manner as now provided by law in other civil cases." NMSA 1978, § 44-2-14 (1899). *Kucel v. N.M. Med. Rev. Comm'n*, 2000-NMCA-026, ¶ 16, 128 N.M. 691, 997 P.2d 823 ("An order is final if it includes decretal language that carries the decision into effect by ordering that something happen." (internal quotation marks and citation omitted)). The Department did not timely appeal the Peremptory Writ and offered no excuse or explanation for that decision. *See* Rule 12-201(A)(1)(b) NMRA (establishing that a party has "thirty (30) days" to file the timely appeal of a final judgement of the district court). This Court has previously stated that "[a]n untimely appeal should be heard if (1) there is a court-caused delay, (2) unusual circumstances are present, or (3) the appeal is only marginally untimely." *Santa Fe Pac. Tr., Inc. v. City of Albuquerque*, 2012-NMSC-028, ¶ 27, 285 P.3d 595. We have previously acknowledged that the proper test balances enforcing the mandatory precondition of the timely filing of an appeal against the absolute constitutional right to an appeal. "[P]rocedural formalities [do] not outweigh basic rights where the facts present a *marginal case* which does not lend itself to a bright-line interpretation." *Id.* (second alteration in original) (emphasis added) (internal quotation marks and citation omitted).

**{27}** The Department appealed 177 days after the Peremptory Writ was issued, which cannot be considered "marginally untimely." In addition, the Department has not pointed to any unusual circumstances beyond its control that should excuse the late filing. *See id.* ¶¶ 1, 31 (determining that no unusual circumstance existed because there were no "circumstances beyond [the appellant's] control to excuse its significantly untimely filing"). Further, the Department does not assert that the delay was attributable to the court or that the appeal of the merits of the Peremptory Writ was marginally untimely. Therefore, the Court of Appeals did not abuse its discretion by declining to invoke its jurisdiction.

**{28}** The Department next contends that the district court improperly held the Department in contempt and therefore improperly awarded Petitioners attorney fees as sanctions. For the following reasons, we disagree.

## B.    The District Court's Contempt Holding and Imposition of Sanctions

**{29}**     This Court reviews "the district court's imposition of contempt sanctions for abuse of discretion." *Tran v. Bennett*, 2018-NMSC-009, ¶ 30, 411 P.3d 345. "An abuse of discretion occurs when the court's ruling is clearly against the logic and effect of the facts and circumstances of the case or is based on a misunderstanding of the law." *Id.* (internal quotation marks and citation omitted).

**{30}**     "The elements necessary for a [district court to find] civil contempt are: (1) knowledge of the court's order, and (2) an ability to comply." *Id.* ¶ 35 (internal quotation marks and citation omitted). Willfulness is not required; the contemnor simply must not have complied. *Id.* The first element is not in dispute; the Department had knowledge of the district court's order. Therefore, we are only concerned with whether the Department had the ability to comply and did not.

**{31}**     The Department was ordered to perform a number of statutorily required acts: (1) "promptly issue notices of valuation for [tax] years 2009-2011 reflecting [the] value of Hess line," (2) present "[t]he [district court's] rulings . . . on the taxability of the Hess line . . . to the hearing officer," (3) certify the value of the Hess Line to the Assessor, (4) "immediately investigate the ownership and construction of the Whiting line," and (5) issue notices of valuation, timely complete any protests, and certify the value of the Whiting line to the Assessor for tax years 2013, 2014, and 2015.

**{32}**     On appeal, the Department admits "that it could have issued the notices of valuation," but argues that "[m]ailing the notices would have been a trivial exercise." Performing one's statutory obligation, especially in the context of taxation, is never trivial. No citizen or government official can simply pick and choose when or which laws must be followed. *See* Annual Message of President Theodore Roosevelt, *To the Senate and House of Representatives*, 38 Cong. Rec. 3 (Dec. 7, 1903) ("No man is above the law and no man is below it; nor do we ask any man's permission when we require him to obey it. Obedience to the law is demanded as a right; not asked as a favor.").

**{33}**     A writ of mandamus properly "lies to compel a ministerial act which concerns the public." *Marbury v. Madison*, 5 U.S. 137, 152 (1803); NMSA 1978, § 44-2-4 (1884) (stating that a writ of mandamus "may be issued to any inferior tribunal, corporation, board or person, to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station"). The Department was required to issue the notices of valuation, timely conclude any protest, and certify the value of the Hess and Whiting lines to the Assessor regardless of whether the Department deemed the requirements trivial. Because the Department admittedly failed to act in accordance with the dictates of the law after the district court ordered the Department to act and after the Department was given notice and an opportunity to be heard, we cannot say that the district court abused its discretion to hold the Department in contempt.

**{34}**     The Department attempted to justify not promptly issuing the notices of valuation by arguing that it had the discretion to wait until after the AHO concluded the Hess line protest for tax years 2012 through 2015 to decide whether it would apply the district court's construction or the hearing officer's construction of Section 7-36-29(B)(7). Based

on the AHO hearing officer's determination, the Department then attempted to excuse its noncompliance by arguing that the determination rendered the Hess line *and* the Whiting line valueless and not taxable.[2] As the respondent in the district court proceedings, the Department was aware that the district court construed the statute to require the property to have a taxable value. Despite the obvious conflicting legal determinations, the Department did not provide a reasoned, principled explanation for why it declined to appeal the hearing officer's construction of Section 7-36-29(B)(7). The Department simply asserted that the decision to appeal was discretionary, and therefore it did not have to appeal. This assertion is unavailing, and the Department elected to bear the consequences of not appealing the district court's construction of the statute.

**{35}** "Civil contempt proceedings are remedial, instituted to preserve and enforce the rights of private parties to suits and to compel obedience to the orders, writs, mandates and decrees of the court." *Tran*, 2018-NMSC-009, ¶ 33 (internal quotation marks and citation omitted). As a remedial measure, a court may impose either coercive or compensatory sanctions if the court finds civil contempt. *Id.* ¶ 35. "Our courts have limited the amount of a compensatory sanction to the actual loss plus the costs and expenses, including counsel fees, incurred in investigating and prosecuting the contempt." *Id.* ¶ 36 (internal quotation marks and citation omitted).

**{36}** The district court applied the sanctions as a compensation to the Petitioners who sought to enforce the Peremptory Writ and as a coercive measure to encourage the Department to comply with the district court's order. We cannot say that the district court abused its discretion by awarding costs and fees to Petitioners.

## C. The Department Offered No Evidence to Dispute the Reasonableness of the Award of Costs and Fees

---

2We observe that the Department's argument is premised on a number of assumptions. First and foremost, the Department assumes the hearing officer's construction of the Tax Code is legally correct and the district court's construction of Section 7-36-29 was nonbinding or erroneous. The Department also assumes it is not required to certify the result of any protest to the Assessor if that protest results in a valuation of zero.

We are skeptical of the Department's first assumption because the Department did not appeal a legal conclusion that conflicted with its position and that came from the district court's prior construction of Section 7-36-29 (1975). The judiciary is the branch of government in which the power of statutory interpretation properly lodges. *See Chevron U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984) (observing that the judiciary has the final authority to construe a statute but may give deference to an administrative interpretation that is a "permissible construction of the statute"); *accord Dona Ana Mut. Domestic Water Consumers Ass'n v. N.M. Pub. Regul. Comm'n*, 2006-NMSC-032, ¶ 10, 140 N.M. 6, 139 P.3d 166 ("[I]t is the function of the courts to interpret the law, and we are therefore not bound by an agency's interpretation of law and may substitute our own judgment for that of the agency." (brackets and parentheses omitted) (internal quotation marks and citation omitted)). Although the AHO, a quasi-judicial agency under the executive branch, has discretion to construe a statute if the judiciary has not previously construed the statute, the AHO does not have the authority to overrule a prior judicial construction. If the district court erred by incorrectly construing Section 7-36-29 (1975), that is for the appellate courts to decide, not the AHO.

Nonetheless, the construction of Section 7-36-29 is not properly before this Court and does not affect our determination that the district court did not abuse its discretion by holding the Department in contempt.

**{37}** Finally, the Department does not contest whether the award of cost and fees represents the costs that Petitioners incurred in investigating and litigating the contempt proceeding. *Bd. of Cnty. Comm'rs*, A-1-CA-36305, mem. op., ¶ 49. Instead, the Department only contests whether the award was reasonable, which we review for an abuse of discretion. *State ex rel. N.M. State Highway and Transp. Dep't v. Baca*, 1995-NMSC-033, ¶¶ 21, 26, 120 N.M. 1, 896 P.2d 1148; *Smith v. FDC Corp.*, 1990-NMSC-020, ¶¶ 27-28, 109 N.M. 514, 787 P.2d 433 (allowing that "[r]easonable attorney[] fees may be awarded at the court's discretion" and concluding that the trial court, having measured the award against objective standards, "did not abuse its discretion in awarding attorney fees"). The Department also urges this Court to view the award of cost and fees with circumspection because the Department is an agency of the state. While we appreciate this concern, we are guided by "a court's inherent authority to control the parties and the litigation before it outweigh[s] the possible depletion of public revenues." *Faber v. King*, 2015-NMSC-015, ¶ 32, 348 P.3d 173 (internal quotation marks and citation omitted).

**{38}** Petitioners filed a Verified Application for Fees and Costs, which included statements that outlined the work performed and billed to Petitioners concerning the show cause proceeding. The matter was fully briefed. The district court reviewed the briefing and the evidence presented, heard the arguments of counsel, and specifically found "that the particular hourly rates and hours set out in the application are reasonable."

**{39}** The award was supported by evidence that included attestations that the hourly rates were those normally charged for the applicable personnel and by a schedule indicating the amount charged for each task. The Department did not proffer evidence to support its argument that the fees were unreasonable. The Department instead argued that the fees were "not [the] usual and customary fees of an attorney in this region" and that Petitioners should be required to provide additional evidence to prove the fees are reasonable.

**{40}** We have stated that a district court that awards fees and costs may consider certain factors in order to determine the award is reasonable, and that those factors include

> (1) the time and labor required—the novelty and difficulty of the questions involved and skill required; (2) the fee customarily charged in the locality for similar services; (3) the amount involved and the results obtained; (4) the time limitations imposed by the client or by the circumstances; and (5) the experience, reputation and ability of the lawyer or lawyers performing the services.

*Lenz v. Chalamidas*, 1989-NMSC-067, ¶ 19, 109 N.M. 113, 782 P.2d 85. The Department's argument does not address any of these specific factors. In short, the Department does not cogently address how the district court abused its discretion in finding that "the hourly rates and the hours set out in the application are reasonable."

**{41}** As we have previously stated, this Court "will not review unclear arguments, or guess at what a party's arguments might be." *Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 (brackets omitted) (internal quotation marks and citation omitted). We cannot say that the district court's award of costs and fees was unreasonable as a matter of law where sufficient evidence was presented to support the award and where the district court specifically found the award was reasonable.

### III.    CONCLUSION

**{42}** We therefore affirm.

**{43}   IT IS SO ORDERED.**

**DAVID K. THOMSON, Justice**

**WE CONCUR:**

**MICHAEL E. VIGIL, Chief Justice**

**BARBARA J. VIGIL, Justice**

**C. SHANNON BACON, Justice**