# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number: 2019-NMSC-015**

**Filing Date: August 8, 2019**

**NO. S-1-SC-36772**

**NEW MEXICO INDUSTRIAL ENERGY CONSUMERS,**

     Appellant,

v.

**NEW MEXICO PUBLIC REGULATION COMMISSION,**

     Appellee,

and

**NEW ENERGY ECONOMY,**

     Intervener-Appellee/Cross-Appellant,

and

**PUBLIC SERVICE COMPANY OF NEW MEXICO, and COALITION FOR CLEAN AFFORDABLE ENERGY,**

     Interveners-Appellees.

**In the Matter of Public Service Company of New Mexico's Application for Approval of its Renewable Energy Act Plan for 2018 and Proposed 2018 Rider Rate Under Rate Rider No. 36, NMPRC Case No. 17-00129-UT**

**APPEAL FROM THE NEW MEXICO PUBLIC REGULATION COMMISSION**

Released for Publication October 29, 2019.

New Mexico Industrial Energy Consumers
Peter Jude Gould
Kelly D. Gould
Santa Fe, NM

for Appellant

Judith Ellen Amer
Santa Fe, NM

for Appellee

New Energy Economy
Mariel Nanasi
Santa Fe, NM

for Cross-Appellant

PNM Resources, Inc.
Stacey J. Goodwin
Ryan T. Jerman
Albuquerque, NM

Miller Stratvert, P.A.
Richard L. Alvidrez
Albuquerque, NM

for Intervener Public Service Company of New Mexico

Charles F. Noble
Santa Fe, NM

for Intervener Coalition for Clean Affordable Energy

**OPINION**

**BACON, Justice.**

**{1}**     New Energy Economy (NEE) appeals an order issued by the New Mexico Public Regulation Commission (Commission or PRC) approving Public Service Company of New Mexico's (PNM) renewable energy procurement plan (Plan) for the year 2018.[1]

---

[1]New Mexico Industrial Energy Consumers (NMIEC) also appealed the Commission's final order. In its appeal, NMIEC argued that (1) Method A, which adjusts PNM's methodology for calculating customer fuel costs, was adopted by the Commission in an arbitrary, capricious, and biased manner; (2) the Commission improperly modified its order adopting Method A during the pendency of NMIEC's appeal of that order; and (3) PNM's Plan violated the Commission's regulations by failing to account for certain costs attributable to renewable resources. After oral argument in this case, NMIEC moved for withdrawal of its appeal without opposition from any party. NMIEC's withdrawal was based on this Court's opinion in *Pub. Serv. Co. of N.M. v. N.M. Pub. Regulation Comm'n*, 2019-NMSC-012, ¶ 113, 444 P.3d 460, which resolved some of the issues raised by NMIEC, and the Legislature's passage of the Energy Transition Act, which, according to NMIEC, "may well moot" other issues raised in its appeal. We do not address the merits of NMIEC's withdrawn arguments in this opinion.

The Renewable Energy Act, NMSA 1978, §§ 62-16-1 to -10 (2004, as amended through 2019), requires public utilities like PNM to submit such plans annually for the Commission's approval, *see* § 62-16-4(F)-(I).

{2}     PNM submitted an application for the Commission to approve its 2018 Plan in PRC Case No. 17-00129-UT. In its application, PNM sought to demonstrate its compliance with Renewable Energy Act requirements and obtain the Commission's approval of renewable energy procurements, among other items. NEE challenges the Commission's approval of PNM's 2018 Plan by arguing that PNM's proposed procurement of solar energy generating facilities relied on an unfair request for proposal (RFP) process. NEE contends that PNM designed its RFP to limit the universe of potential bidders and select its predetermined, preferred type of renewable energy bid.

{3}     We conclude that NEE did not meet its burden of proving that the Commission's approval of the solar energy procurement was unreasonable or unlawful because evidence in the record supports the Commission's determination that the challenged provisions of the RFP were reasonable under the facts and circumstances of this case. We affirm the Commission's final order approving PNM's 2018 Plan.

## I.     BACKGROUND

{4}     In its 2018 Plan, PNM sought the Commission's approval to procure 50 megawatts (MW) of photovoltaic power generation facilities to be constructed beginning in 2018 by Affordable Solar, Inc. Affordable Solar proposed to construct these facilities in response to PNM's RFP for 50 MW of renewable energy. PNM issued its RFP on March 3, 2017, and allowed thirty-one days for responsive bids. Under 17.9.572.13(B), (C) NMAC, PNM was obligated to select the most cost-effective renewable energy project proposed in response to the RFP. To rank the proposed projects by cost-effectiveness, PNM compared the projects in terms of levelized cost, which is a measure of the cost per unit of energy over the lifetime of a project.

{5}     The RFP did not solicit a specific type of renewable energy or a specific type of project through which PNM would receive the energy. In other words, the RFP was not limited to proposals that offered solar energy through a turnkey agreement, such as Affordable Solar's proposal. In this context, a turnkey agreement is an agreement in which one party constructs electricity generating facilities and then transfers ownership of the facilities to another party. By contrast, a purchased power agreement (PPA) is an agreement in which one party generates electricity and another party purchases the electricity without obtaining ownership of the generation facilities. PNM's RFP treated turnkey proposals and PPA proposals differently by requiring only PPA bidders to determine transmission and interconnection costs for their bids. PNM predetermined this information for turnkey proposals. The basis for this distinction is that PNM had control of six locations capable of housing solar generating facilities (PNM-Designated Sites) and was able to predetermine the transmission and interconnection costs for turnkey projects to be housed at these sites. Unlike turnkey projects, PPA projects

would not be housed at the PNM-Designated Sites, and PNM therefore did not predetermine transmission and interconnection costs for PPA proposals.

**{6}** PNM received six bids in response to its RFP: four turnkey bids and two PPA bids. Notably, each of the two submitted PPA bids failed to meet all the requirements of the RFP. One PPA bid failed to include the required transmission and interconnection cost information for PPA bids, and the other PPA bid was expressly contingent upon PNM procuring an additional 50 MW of solar energy in excess of the 50 MW requested in the RFP. PNM did not select either of these PPA bids, and instead selected Affordable Solar's turnkey bid, which had the lowest levelized cost of any bid submitted to PNM, making it the most cost-effective bid.

**{7}** NEE's appeal is premised on the argument that PNM structured its RFP unfairly in favor of turnkey bidders, which compels reversal of the Commission's final order. Specifically, NEE contends that the Commission's approval of the project was arbitrary, capricious, and not supported by substantial evidence. Guided by our standard of review of NEE's contentions, we disagree and affirm the Commission's final order.

## II.  STANDARD OF REVIEW

**{8}** The "party challenging a PRC final order has the burden of establishing that the order is arbitrary and capricious, not supported by substantial evidence, outside the scope of the agency's authority, or otherwise inconsistent with law." *N.M. Att'y Gen. v. N.M. Pub. Regulation Comm'n*, 2015-NMSC-032, ¶ 9, 359 P.3d 133 (internal quotation marks and citation omitted); *see also* NMSA 1978, § 62-11-4 (1965) ("The burden shall be on the party appealing to show that the order appealed from is unreasonable, or unlawful."). Here, NEE challenges the Commission's final order on the grounds that it is (1) arbitrary and capricious, and (2) not supported by substantial evidence. We have held that "[a]n agency's action is arbitrary and capricious if it provides no rational connection between the facts found and the choices made, or entirely omits consideration of relevant factors or important aspects of the problem at hand." *Albuquerque Cab Co. v. N.M. Pub. Regulation Comm'n*, 2017-NMSC-028, ¶ 8, 404 P.3d 1 (internal quotation marks and citation omitted). We have also held that a decision is supported by substantial evidence when it is supported by evidence "that is credible in light of the whole record and that is sufficient for a reasonable mind to accept as adequate to support the conclusion reached by the agency." *N.M. Indus. Energy Consumers v. N.M. Pub. Regulation Comm'n*, 2007-NMSC-053, ¶ 24, 142 N.M. 533, 168 P.3d 105 (internal quotation marks and citation omitted). As the party challenging the Commission's final order, NEE carries the burden of proving that the final order is arbitrary and capricious or not supported by substantial evidence to warrant our reversal of the Commission. *Albuquerque Bernalillo Cty. Water Util. Auth. v. N.M. Pub. Regulation Comm'n*, 2010-NMSC-013, ¶ 17, 148 N.M. 21, 229 P.3d 494.

## III.  DISCUSSION

**{9}** In its attempt to meet its burden of proof, NEE emphasizes two facets of the RFP: (1) its thirty-one-day deadline for bidders to submit their bids, and (2) its restriction of PNM-Designated Sites to bidders proposing turnkey agreements. Neither of these facets of the RFP proves that PNM structured the RFP in order to select its preferred type of renewable energy bid. NEE also stresses that the hearing examiner in this case recommended that the Commission not approve the Affordable Solar project. The hearing examiner's recommended decision stated that rejection of the project was the correct decision and it was not a "difficult call." Our review is guided by whether substantial evidence supports the Commission's final order—not the hearing examiner's recommended decision. *See Doña Ana Mut. Domestic Water Consumers Ass'n v. N.M. Pub. Regulation Comm'n*, 2006-NMSC-032, ¶ 27, 140 N.M. 6, 139 P.3d 166 (noting that this Court's "review of a final order by the PRC is not altered when the PRC's order is contrary to the recommendations of its hearing examiner or staff"). As we explain below, evidence in the record supports the Commission's determination in its final order that PNM's RFP gave all bidders a fair opportunity to participate and compete for PNM's selection.

**A.      The Commission's Approval of the Affordable Solar Project Was Not Arbitrary and Capricious Because Record Evidence Demonstrates That the Challenged Aspects of PNM's RFP Were Consistent with Industry Practice**

**{10}** NEE contends that the thirty-one-day response deadline in PNM's RFP was unfair to bidders proposing PPA agreements because the RFP required these proposals to contain interconnection and transmission cost information. NEE views the requirement as unfair because this information can take months or years to ascertain. NEE also contends that restricting the PNM-Designated Sites to turnkey bidders was unfair to PPA bidders, especially because PNM provided interconnection and transmission cost information for the turnkey proposals at those sites. In essence, NEE alleges that this provision of the RFP was unfair to PPA bidders because they were required to determine their interconnection and transmission costs, while their turnkey-bidder counterparts faced no such requirement. NEE argues that these aspects of the RFP reveal that PNM favored turnkey proposals over PPA proposals and structured the RFP to give turnkey bidders an unfair advantage.

**{11}** NEE's arguments about the unfairness of PNM's RFP are contradicted by evidence in the record, which demonstrates that the RFP was similar to prior RFPs issued by PNM and other utilities. We highlight four pieces of evidence that belie the notion that PNM's RFP was unfair. First, PNM introduced evidence that three other utilities issued renewable resource RFPs in 2017 with response deadlines of thirty days, twenty-two days, and twenty days—all shorter than PNM's thirty-one-day response deadline. Second, witnesses testified in the proceeding below that developers commonly have renewable energy projects "on the shelf," which means that they are sufficiently developed to provide credible information about project costs and implementation quickly when an RFP is issued. Third, PNM's RFP offered prospective bidders a medium to communicate with PNM regarding the provisions of the RFP, including extension of deadlines, and no PPA bidder used this medium to request

additional time beyond the thirty-one-day deadline. Fourth, PNM's RFP was based on PNM's standard competitive bidding practices that it has used and developed over time.

**{12}** In light of this evidence in the record, we conclude that the Commission's approval of the Affordable Solar project was not arbitrary and capricious, because a rational connection exists between the facts found by the Commission and its approval of the project. The fact that three utilities other than PNM issued RFPs in 2017 with response deadlines shorter than thirty-one days is evidence that PNM's RFP deadline was within the bounds of industry practice and was not an outlier, as argued in this case. Multiple witnesses testified that developers commonly have projects "on the shelf," which includes having already ascertained interconnection costs, to be able to respond promptly to newly issued RFPs. This testimony contradicts the argument that thirty-one days was an unreasonably short period of time to prepare and submit a responsive bid. The fact that no developers sought an extension of the thirty-one-day response deadline reinforces the Commission's conclusion that the deadline was reasonable. Although an NEE witness testified that PPA bidders might have understood from PNM's RFP requirements that PNM was seeking a turnkey project, this testimony is speculative and does not render the Commission's order arbitrary and capricious, especially since the terms of the RFP expressly permitted PPA bids. To the extent that NEE argues that PNM harbored a general bias against PPA developers, such a claim is unpersuasive, because two of the three renewable resource proposals in PNM's 2018 Plan involve PPAs. Since this evidence in the record bears a rational connection to the Commission's decision to approve the Affordable Solar project, we conclude that NEE has not met its burden to prove that the Commission's decision was arbitrary and capricious.

**B.      The Commission's Final Order Is Supported by Substantial Evidence, Even if Conflicting Testimony Exists in the Record**

**{13}** Similarly, NEE has not met its burden to prove that the Commission's approval of the Affordable Solar project was not supported by substantial evidence. The record evidence set out in the preceding paragraphs is "credible in light of the whole record and . . . is sufficient for a reasonable mind to accept as adequate to support the conclusion reached by the [Commission]." *N.M. Indus. Energy Consumers*, 2007-NMSC-053, ¶ 24 (internal quotation marks and citation omitted). Although testimony was given in the proceeding below that contradicts the Commission's final decision, an agency decision can be supported by substantial evidence even when conflicting testimony exists in the record. *Att'y Gen. of N.M. v. N.M. Pub. Serv. Comm'n*, 1984-NMSC-081, ¶ 12, 101 N.M. 549, 685 P.2d 957. It is not this Court's role to reweigh the evidence or determine the credibility of conflicting testimony. *See Gonzales v. N.M. Bd. of Chiropractic Exam'rs*, 1998-NMSC-021, ¶ 23, 125 N.M. 418, 962 P.2d 1253. Since evidence was presented before the Commission that is sufficient for a reasonable mind to accept the Commission's decision to approve the Affordable Solar project, we affirm the Commission's final order approving the project.

## IV.      CONCLUSION

**{14}** We conclude that NEE did not meet its burden to prove that the Commission's final order was unreasonable or unlawful, as required for reversal under Section 62-11-4. Thus, we affirm the Commission's final order in its entirety.

**{15}  IT IS SO ORDERED**.

**C. SHANNON BACON, Justice**

**WE CONCUR:**

**JUDITH K. NAKAMURA, Chief Justice**

**BARBARA J. VIGIL, Justice**

**MICHAEL E. VIGIL, Justice**

**DAVID K. THOMSON, Justice**